## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Nathaniel Jackson,                                        Case No. 20-cv-01978-PAM-KMM

                          Petitioner,

                                                          **REPORT AND**
v.                                                        **RECOMMENDATION**

Tracy Beltz,

                          Respondent.

A jury convicted the petitioner, Nathaniel Jackson, of one count of first-degree burglary and two counts of first-degree aggravated robbery. The trial court sentenced Mr. Jackson to a total of 126 months in prison. Mr. Jackson's conviction and sentence were affirmed on appeal.

This matter is now before the Court on Mr. Jackson's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. He argues that the trial court erred when it failed to define "assault" in the jury instructions for the burglary charge; that the jury lacked sufficient evidence to convict him; that his trial counsel was ineffective for failing to fully investigate the case and interview Mr. Jackson's suggested witnesses and for failing to challenge the photo lineup procedure; and a "[v]iolation of writ of Habeas Corpus final disposition of 180 days. And, violation of [his] rights to keep [his] legal papers and documents." Pet., ECF No. 1. For the reasons set forth below, the Court recommends that Mr. Jackson's habeas petition be denied.

## I. Background

### A. The State Court Proceedings

On the morning of March 24, 2015, K.J. sat at the kitchen table in her home in St. Paul, Minnesota, and her husband R.J. sat directly across from her in his wheelchair. *State v. Jackson*, No. A18-0520, 2019 WL 3070093, at *1 (Minn. Ct. App. July 15, 2019), *review denied* (Sept.

25, 2019). K.J. watched a man park a light-colored Cadillac across the street, put on a hardhat and a colored vest, and walk towards her home. *Id.* K.J. relayed her observations to R.J., who told her to lock the front door. *Id.* By the time K.J. reached the front entrance, the man had already entered the couple's home. *Id.* The intruder hit K.J. on the head twice, and she began to bleed. *Id.* Eventually, the intruder also knocked R.J. out of his wheelchair onto the floor. *Id.* The intruder left after taking K.J.'s purse, which was lying on the bed in the couple's bedroom. *Id.*

In a photo lineup that occurred about a month after the attack, R.J. identified Mr. Jackson as the intruder with about 25% certainty. *Id.* K.J., however, could not identify the intruder from any of the photos. *Id.* Besides R.J.'s identification of Mr. Jackson as the intruder, the State's case against Mr. Jackson relied on three pieces of circumstantial evidence: a comb, a hardhat, and a light-colored Cadillac. *Id.*

The police recovered the comb and hardhat from K.J. and R.J.'s house shortly after they arrived at the couple's house to investigate the attack. *Id.* Neither the comb nor the hardhat belonged to R.J. or K.J. *Id.* DNA testing revealed that several individuals' DNA were on the comb, but that the predominant male DNA on the comb belonged to Mr. Jackson, and that this result "would not be expected to occur more than once among unrelated people in the world population." *Id.* The hardhat similarly contained the DNA of multiple people. *Id.* While 39% of the population could be excluded from those people, Mr. Jackson could not be eliminated. *Id.* During the investigation, the police also discovered that Mr. Jackson's stepdaughter owned a light-colored Cadillac to which Mr. Jackson had access on some days in March 2015. *Id.* The car contained a colored work vest, as well as traffic citations issued to Mr. Jackson. *Id.*

Ultimately, a jury convicted Mr. Jackson of one count of first-degree burglary and two counts of first-degree aggravated robbery relating to the attack. *Id.* Mr. Jackson was sentenced to

a total of 126 months in prison, and he appealed his convictions to the Minnesota Court of Appeals. *Id.* at *1–2. Mr. Jackson's appellate counsel argued that the jury lacked sufficient evidence to convict Mr. Jackson, and that the trial court committed plain error when it failed to define "assault" in the jury instruction for the burglary charge. *Id.* at *2.

Mr. Jackson also filed a supplemental *pro se* brief alleging ineffective assistance of trial counsel. *Id.*; Pet'r's Br. to Minn. Ct. App. ("Pet'r's Br."), at 5–15, ECF No. 10-2. In this brief, Mr. Jackson argued that his trial counsel was ineffective for (1) failing to properly investigate the case and interview his suggested witnesses; and (2) failing to challenge the procedure used in the police photo lineup. Pet'r's Br at 7–8. Mr. Jackson also claimed a "violation of [his] rights to keep [his] legal papers and documents" and a "violation of writ of habeas corpus final disposition of a 180 days." Pet'r's Br. at 8. While this case was pending, Mr. Jackson was in custody in Illinois for an unrelated matter. He argued that even though he filed a request for a speedy disposition of his Minnesota case under the Interstate Agreement on Detainers Act, it was not resolved within the required 180-day window. Pet'r's Br. at 12; 18 U.S.C. App. 2 § 2 (stating that a prisoner who has given proper notice of his request for a speedy trial under the Interstate Agreement on Detainers Act "shall be brought to trial within one hundred and eighty [180] days"). Moreover, Mr. Jackson claimed that when he was eventually transferred from Illinois to Ramsey County Jail in St. Paul, "all of [his] legal documents, affidavits, and other important paperwork that [he had] done, all for this case . . . [had] disappeared, and he is very concerned about that property." Pet'r's Br. at 8.

The Minnesota Court of Appeals affirmed Mr. Jackson's convictions and sentence in an unpublished opinion. *Jackson*, 2019 WL 3070093. The Court of Appeals began by analyzing the merits of Mr. Jackson's sufficiency-of-the-evidence claim. *Id.* at *2. The Court of Appeals held

that when considered alongside the victims' testimony, the circumstantial evidence in this case—the car, the comb, and the hardhat—was "sufficient to allow the jury to reach [a guilty] verdict." *Id.* The Court of Appeals dismissed Mr. Jackson's argument that he was not the last person to possess the comb as unpersuasive. *Id.*

The Court of Appeals also rejected Mr. Jackson's jury-instruction claim on the merits. *Id.* at *3. Mr. Jackson's trial counsel did not object to the jury instruction for the burglary charge at trial, requiring the Court of Appeals to evaluate Mr. Jackson's claim for plain error. *Id.* Because Mr. Jackson did not cite any case law, rule, or conduct requiring that the term "assault" be defined in the jury instructions for a first-degree burglary charge, the court held that Mr. Jackson's claim did not meet the requirements of plain error. *Id.*

The Court of Appeals then analyzed the merits of Mr. Jackson's claim that his trial counsel was ineffective for failing to properly investigate the case and interview potential witnesses. *Id.* at *4. The court held that Mr. Jackson failed to overcome the presumption that his trial counsel's investigation was reasonable, because Mr. Jackson explained "neither what a further investigation would have revealed nor what advantage he would have derived from whatever might have been revealed." *Id.* The Court of Appeals also rejected Mr. Jackson's claim that his trial counsel was ineffective for failing to challenge the photo lineup. *Id.* They held that "the lack of harm suffered from the photo lineup is obvious in light of the facts that K.J. did not select any of the six photos as depicting the intruder and R.J. selected appellant's photo from the group with only 25% certainty." *Id.* Even though the same two police officers who started the investigation into this attack conducted the photo lineup, the court pointed out that this did not automatically make the photo lineup evidence inadmissible, and it noted that Mr. Jackson provided no support for his claim that the "the whole [photo lineup] process was tainted from the

very start." *Id.* The Court of Appeals did not address Mr. Jackson's *pro se* claims about the loss of his legal papers or the failure to bring Mr. Jackson to trial within the 180-day window specified in the Interstate Agreement on Detainers Act. *Id.* at *1–4.

After the Court of Appeals affirmed Mr. Jackson's convictions, Mr. Jackson's appellate counsel filed a Petition for Further Review ("PFR") to the Minnesota Supreme Court. Pet. for Further Review Documents ("PFR Docs."), at 16–33, ECF No. 10-2. In the PFR, Mr. Jackson raised two issues: (1) whether there was sufficient evidence to convict Mr. Jackson; and (2) whether Mr. Jackson's trial counsel provided ineffective assistance of counsel. PFR Docs. at 17–18. With respect to the ineffective-assistance-of-counsel claim, Mr. Jackson asked the court to consider whether Mr. Jackson's trial counsel was ineffective for failing to promptly investigate and interview potential witnesses and for failing to pursue Mr. Jackson's claims about his missing legal papers and potential violation of the Interstate Agreement on Detainers Act. PFR Docs. at 18. Mr. Jackson did not raise the jury-instruction issue in his PFR. PFR Docs. at 16–32. The Minnesota Supreme Court summarily denied Mr. Jackson's PFR without explanation on September 25, 2019. PFR Docs. at 33.

### B. Federal Habeas Corpus Proceedings

On September 16, 2020, Mr. Jackson timely filed a petition for a writ of habeas corpus pursuant to § 2254. *See* Pet., ECF No. 1; 28 U.S.C. § 2254. The habeas petition raises four grounds for relief.[1] Pet. at 6–12.

---

[1]    Mr. Jackson's habeas petition initially appeared to raise a fifth claim asserting ineffective assistance of appellate counsel. Pet. at 13. Mr. Jackson later voluntarily dismissed this claim in order to avoid the possibility that this Court would dismiss Mr. Jackson's entire petition on the ground that it constituted a "mixed petition." Order, ECF No. 3; Letter to Mag. J. ("Voluntary Dismissal Docs."), ECF No. 7. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982) (holding that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims").

In Ground One, Mr. Jackson argues that the trial court erred when it neglected to include a definition for assault in the jury instructions for the burglary charge. Pet. at 6.

In Ground Two, he claims that the jury lacked sufficient evidence to convict him. Pet. at 8. Mr. Jackson's primary argument is that the presence of other people's DNA on the comb reasonably permits the inference—inconsistent with Mr. Jackson's guilt—that one of the other DNA contributors possessed the comb last. Pet. at 8.

Third, Mr. Jackson asserts that his trial counsel was ineffective for failing to fully investigate the case and interview Mr. Jackson's suggested witnesses and for failing to challenge the photo lineup procedure. Pet. at 9.

In Ground Four, Mr. Jackson claims a "[v]iolation of writ of Habeas Corpus final disposition of 180 days. And, violation of [his] rights to keep [his] legal papers and documents." Pet. at 11. As in his *pro se* brief to the Minnesota Court of Appeals, Mr. Jackson asserted that "all of his legal work that he had prepared" for his case had been confiscated by staff at the Ramsey County Jail in St. Paul. Pet. at 11.

In response to the petition, the State argues that none of these claims merits habeas relief. *See* Resp't's Ans., ECF No. 10. The State contends that the first and fourth claims are procedurally defaulted because Mr. Jackson failed to fairly present a federal constitutional claim to the Minnesota state courts prior to his habeas petition. *See* Resp't's Ans. at 4–7. The State asserts that Mr. Jackson failed to show cause and prejudice to excuse this procedural default. *See* Resp't's Ans. at 7. Further, the State asserts that Mr. Jackson's second and third claims fail on their merits because Mr. Jackson did not demonstrate that the state courts' conclusions were based on either an unreasonable application of clearly established federal law or an unreasonable determination of the facts. *See* Resp't's Ans. at 7–12.

Having received all of the necessary information, this matter is now ripe for decision.

## II. Legal Framework

Federal courts cannot grant a writ of habeas corpus from a state detainee unless he has first exhausted all available state court remedies for each of his claims. 28 U.S.C. § 2254(b)(1)(A). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To properly exhaust a claim, a petitioner must "give the state courts one full opportunity to resolve any constitutional issues" by going through one complete round of appeals in the state courts before seeking relief in federal court. *Id.* at 845. In Minnesota, a petitioner must present his claims to the Minnesota Supreme Court before they can be entertained in federal court. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[A] prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review). . . .").

As part of exhausting his claims, a petitioner must fairly present the federal dimension of each issue to the state courts. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). This does not mean that a petitioner must spell out every detail or nuance of the federal constitutional claim, but he must do enough to ensure that the state courts have notice of the federal issues. *See McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (stating that fairly presenting a federal claim in state court requires petitioner to have "referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue") (internal

quotation marks omitted). If the petitioner has not fairly presented his claims in state court, they are unexhausted and generally cannot be considered on the merits by a federal court reviewing a habeas petition. *See* 28 U.S.C. § 2254(b)(1). Even when a petitioner has raised a claim in state court, it is not automatically ripe for federal review. If the claim was raised in state court, but the state court applied an "independent and adequate" state procedural rule in declining to rule on the merits of the issue, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedurally defaulted claim cannot be entertained in a federal habeas proceeding unless the petitioner shows cause for the default and establishes that he suffered "actual prejudice as a result of the alleged violation of federal law."[2] *Id.*

If, on the other hand, a federal claim was not raised in the state courts—either because it was not fairly presented or because it was not raised at all—a federal court must determine whether the petitioner could still obtain a decision on the merits of his claim in state court.[3] *McCall*, 114 F.3d at 757. If state procedural rules bar the petitioner from now getting a ruling on the merits of his claim, it is considered procedurally defaulted. *Id.*; *see also Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005). Though the basis of the default in such a case is different than the one presented in *Coleman*, a federal court considering this type of procedural default conducts the same cause-and-prejudice analysis. *McCall*, 114 F.3d at 757.

---

[2]    A federal court can also entertain procedurally defaulted claims if the prisoner may be a victim of a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Eighth Circuit has indicated this standard involves demonstrating actual innocence, which is not at issue in this case because Mr. Jackson has not presented evidence to satisfy such a showing. *See Gordon v. Arkansas*, 823 F.3d 1188, 1196 (8th Cir. 2016).

[3]    Where there is an available state court remedy, the federal court is left with two courses of action: dismiss the petition without prejudice or pursue the "stay and abeyance" procedure outlined in *Rhines v. Weber*, 544 U.S. 269 (2005). *See Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005). For the reasons discussed below, neither of these courses of action are appropriate in Mr. Jackson's case.

If a petitioner has fairly presented a federal claim and exhausted the available remedies in state court, and the claim was adjudicated on the merits, a federal court may consider the merits of the claim. However, a federal court will only grant habeas relief in two scenarios. The adjudication must either have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it must have "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III. Analysis

The Court has carefully examined each of Mr. Jackson's claims. As explored below, the Court finds that none of these claims merit habeas relief. Two claims have been procedurally defaulted, and the remaining two claims fail on the merits. The Court therefore recommends Mr. Jackson's habeas petition be denied.

### A. Ground Four: Legal Papers and the Interstate Agreement on Detainers Act

There are two possible ways to construe Mr. Jackson's claim about his legal papers and the Interstate Agreement on Detainers Act. The first is to treat this as a standalone claim *separate* from the ineffective assistance of trial counsel claim that Mr. Jackson has also raised in his habeas petition. The second possibility is that this claim is actually *part of* Mr. Jackson's assertion of ineffective assistance of trial counsel, because this portion of Mr. Jackson's habeas petition references the actions of his trial counsel. *See* Pet. at 10 ("*Not only did my counsel and the courts* when over [sic] my habeas corpus for final disposition of a 180 [days] . . . [o]nce back in Minnesota['s] Ramsey County Jail [a]ll his legal work that he had prepared was took from him and not return[ed].") (emphasis added). Interpreting this claim regarding Mr. Jackson's legal

papers and the Interstate Agreement on Detainers Act as a standalone, substantive claim appears more consistent with Mr. Jackson's intentions, but out of an abundance of caution, the Court will consider both interpretations. *See Slack v. McDaniel*, 529 U.S. 473, 487 (2000) (emphasizing that the exhaustion doctrine is "not [designed] to trap the unwary *pro se* prisoner"). Ultimately, the construction given to Mr. Jackson's claim does not affect its outcome. Under both interpretations, this Court finds that Mr. Jackson procedurally defaulted as to this claim and that he failed to make the requisite showing of cause and prejudice to overcome such a default. As a result, the Court concludes that claim four regarding Mr. Jackson's legal papers and the Interstate Agreement on Detainers Act should be denied.

### *Standalone Claim*

The Court begins by construing Mr. Jackson's claim about his legal papers and the Interstate Agreement on Detainers Act as a standalone substantive claim. To properly exhaust this claim about the "violation of writ of habeas corpus final disposition of a 180 days [and v]iolation of [his] rights to keep [his] legal papers and documents," Mr. Jackson needed to make the *same* federal constitutional claim in both the state and federal court system. *See Duncan*, 513 U.S. 364 at 366 (1995) (emphasizing that "mere similarity of claims is insufficient to exhaust"). Mr. Jackson, however, failed to raise this issue at every level of the Minnesota state court system and the federal system.

Mr. Jackson presented his claim about his legal papers and the Interstate Agreement on Detainers Act as a standalone Fourteenth Amendment Due Process claim to the Minnesota Court of Appeals, but he did not raise it as a Fourteenth Amendment claim to the Minnesota Supreme Court. Instead, Mr. Jackson's PFR to the Minnesota Supreme Court "re-packaged" it into a

broader Sixth Amendment ineffective-assistance-of-trial-counsel claim.[4] While both claims

center on the same facts, "[i]t is not enough that the facts necessary to support the federal claim

were before the [Minnesota Supreme Court], or that a somewhat similar . . . claim was made."

*Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). An ineffective-assistance-of-

counsel claim and a Fourteenth Amendment claim are grounded in different constitutional

amendments, so they cannot be considered "substantial equivalents" for the purposes of claim

exhaustion. *See Picard*, 404 U.S. at 278 (explaining that claims are not "substantial equivalents"

if they arise under different federal constitutional provisions) (citations omitted); *see also, e.g.*,

*Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (explaining that to satisfy the fair

presentation requirement, the petitioner must present "the same legal theories and factual bases

to the state courts" (quoting *Pollard v. Armontrout,* 16 F.3d 295, 297 (8th Cir.1994))) (internal

quotation marks omitted). Consequently, this Court finds that any Fourteenth Amendment claim

about his legal papers and the Interstate Agreement on Detainers Act was not properly exhausted

in the state court system. *See, e.g.*, *Gray v. Netherland,* 518 U.S. 152, 164–65 (holding that

conceptually distinct claims—even if they arise out of the same constitutional provision—are not

---

[4]    In addition to the Fourteenth Amendment, Mr. Jackson's *pro se* supplemental brief to the Minnesota Court of Appeals listed the Fifth and Sixth Amendments as potential support for this claim. Pet. Br. at 7. Based on the argument Mr. Jackson presented in his *pro se* brief, this Court believes that the crux of Mr. Jackson's constitutional argument about his legal papers and the Interstate Agreement on Detainers Act is best interpreted as a claim that his Fourteenth Amendment Due Process rights were violated. This Court's interpretation, however, has no practical impact because under any lens, Mr. Jackson failed to properly exhaust this claim in the Minnesota state courts. A standalone Fifth Amendment claim or speedy trial Sixth Amendment claim is legally distinct from a Sixth Amendment ineffective-assistance-of-trial-counsel claim involving the same underlying facts.

substantially equivalent for the purposes of claim exhaustion).[5] No Fourteenth Amendment claim was presented at all levels of the state appellate process.

Mr. Jackson's failure to properly exhaust this claim in the Minnesota courts means that this Court must decide whether Mr. Jackson procedurally defaulted the claim, or whether he could now raise it in the state courts. Under the applicable procedural rules in Minnesota, Mr. Jackson cannot now bring a Fourteenth Amendment claim about his legal papers and the Interstate Agreement on Detainers Act in a state postconviction proceeding. Minnesota postconviction courts will not consider claims that were known at the time of appeal and not raised. *State v. Knaffla*, 243 N.W.2d 737, 741 (1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."). Given that Mr. Jackson presented the issues about his legal papers and the Interstate Agreement on Detainers Act as a Fourteenth Amendment claim to the Minnesota Court of Appeals, he could have raised the same issue in his PFR to the Minnesota Supreme Court. As a result, *Knaffla* now bars consideration of that claim in a postconviction proceeding, and the claim is procedurally defaulted. Consequently, Mr. Jackson is barred from obtaining habeas relief unless he can demonstrate cause for the failure to raise the claim in state court and actual prejudice resulting from the violation. *McCall*,

---

[5] Technically, because the Interstate Agreement on Detainers Act is a federal law, Mr. Jackson did not need to allege a potential constitutional violation in order to make a cognizable claim under § 2254. *See* 28 U.S.C. § 2254(a) (stating that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution *or laws . . . of the United States*") (emphasis added). Again, whether the Court views Mr. Jackson's claim about the Interstate Agreement on Detainers Act as a "federal law claim" or a "federal constitutional claim," is irrelevant. Under either scenario, Mr. Jackson failed to properly exhaust his claim about the Interstate Agreement on Detainers Act, because he only presented the Interstate Agreement on Detainers Act issue to the Minnesota Supreme Court as part of his ineffective-assistance-of-trial-counsel claim.

114 F.3d 754, 757 (8th Cir. 1997); *see also Ward v. Roy*, No. 17-CV-4542 (WMW/LIB), 2018 WL 3850733, at *4 (D. Minn. May 10, 2018) (holding that petitioner's habeas claim was procedurally defaulted when he failed to include that claim in his PFR to the Minnesota Supreme Court), *report and recommendation adopted,* No. 17-CV-4542 (WMW/LIB), 2018 WL 3848438 (D. Minn. Aug. 13, 2018).

Mr. Jackson, however, has not suggested any cause to excuse the failure to raise the issues about his legal papers and Interstate Agreement on Detainers Act as a Fourteenth Amendment claim to the Minnesota Supreme Court. Mr. Jackson's initial federal habeas petition asserted that his appellate counsel was ineffective, but Mr. Jackson did not pursue any postconviction relief in state court for this claim before filing his federal habeas petition, even though this avenue was open to him to pursue an ineffective-assistance-of-appellate-counsel claim. *See Wilson v. State*, 582 N.W.2d 882, 885 (Minn. 1998) (indicating that ineffective-assistance-of-appellate-counsel claims are generally not known at the time of direct appeal and can be raised in postconviction proceedings). Because Mr. Jackson failed to raise an ineffective-assistance-of-appellate-counsel claim in state court, it cannot now be used to show cause for the procedural default of his federal habeas claim about his legal papers and the Interstate Agreement on Detainers Act. *See, e.g.*, *Phillips v. Steele*, No. 4:07-cv-521-ERW, 2010 WL 4792043, at *4 (E.D. Mo. Nov. 18, 2010) (finding that ineffective-assistance-of-appellate-counsel claims not raised in state court cannot be used to show cause for default) (citations omitted).

Even had Mr. Jackson established cause for this default, he still failed to make an argument about how he was actually prejudiced by his missing legal papers and the alleged violation of the Interstate Agreement on Detainers Act. Demonstrating actual prejudice requires

"show[ing] that the errors of which [a petitioner] complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (emphasis omitted) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Mr. Jackson has not explained how the outcome of his case likely would have been different had the Ramsey County Jail returned his legal papers. Moreover, the Eighth Circuit has indicated that "the mere failure to comply with the [Interstate Agreement on Detainers Act], without more, does not justify [federal habeas] relief." *See Shigemura v. U.S.*, 726 F.2d 380, 381 (8th Cir. 1984) (quoting *Huff v. U.S.,* 599 F.2d 860, 863 (8th Cir. 1979)). The Eighth Circuit has posited that this Court should only grant federal habeas relief if a violation of the Interstate Agreement on Detainers Act "served to prejudice a prisoner in some aspect of his . . . incarceration or in [his] defen[se]." *See Huff*, 599 F.2d at 863 (denying relief for petitioner's Section 2255 habeas claim about a violation of the Interstate Agreement on Detainers Act because petitioner "neither made a speedy trial request nor demonstrated that the [custody] transfers . . . caused him any actual prejudice") (citations omitted). Mr. Jackson has not presented any arguments about how the alleged violation of the Interstate Agreement on Detainers Act prejudiced his criminal case or his incarceration—much less how it amounted to a Fourteenth Amendment Due process violation. Because there is no reason to excuse Mr. Jackson's failure to raise this claim in state court and he cannot raise it in a new state proceeding, it should be considered procedurally defaulted.

### Ineffective Assistance

Even if this Court construes Mr. Jackson's claim about his legal papers and the Interstate Agreement on Detainers Act as *part of* his claim about ineffective assistance of trial counsel, this Court would still find the claim to be procedurally defaulted. As discussed above, Mr. Jackson's

*pro se* brief to the Minnesota Court of Appeals did *not* argue that his trial counsel was ineffective for failing to pursue the potential issues about his legal papers and the Interstate Agreement on Detainers Act. Mr. Jackson did not wrap his claim about his legal papers and the Interstate Agreement on Detainers Act into an ineffective-assistance-of-trial-counsel claim until the PFR to the Minnesota Supreme Court.

Unlike the Minnesota Court of Appeals, the Minnesota Supreme Court has discretionary review powers, meaning that the first state court to which Mr. Jackson raised this ineffective-assistance-of-trial-counsel claim was not obligated to assess the merits of that claim. Instead, he was required to first raise it to the Court of Appeals. Because Mr. Jackson failed to "present his [ineffectiveness claim about his legal papers and the Interstate Agreement on Detainers Act] in a manner that entitle[d] him to a ruling on the merits," he did not fairly present this standalone claim to each level of the Minnesota state courts. *See Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 389 U.S. 346, 351 (1989)); *see also, e.g.*, *St. Helen v. Senkowski*, 374 F.3d 181, 183–84 (2d Cir. 2004) (holding that petitioner did not "fairly present" his claim in the state court system when he first mentioned this claim in his petition for review to the New York Court of Appeals). As such, Mr. Jackson has not properly exhausted this claim in the Minnesota state courts. *See Gentry*, 175 F.3d at 1083.

The *Knaffla* rule precludes Mr. Jackson from pursuing this aspect of an ineffectiveness claim in state postconviction proceedings. Mr. Jackson cannot plausibly argue that this ineffective-assistance-of-counsel claim was unknown to him at the time he submitted his *pro se* supplemental brief to the Minnesota Court of Appeals. *See Knaffla*, 243 N.W.3d at 741 at 741 (barring state postconviction proceedings for claims that were known or should have been known on direct appeal). Mr. Jackson demonstrated his awareness of the potential issues with his legal

15

papers and the Interstate Agreement on Detainers Act by listing these issues in his brief as a standalone substantive claim.

Mr. Jackson also clearly knew how to make an ineffective-assistance-of-counsel claim, because his *pro se* brief argued that his trial counsel was ineffective for failing to properly investigate the case and interview potential witnesses and for failing to challenge the photo lineup evidence. Mr. Jackson easily could have included his claim about his legal papers and Interstate Agreement on Detainers Act into this claim about ineffective assistance of trial counsel, but he declined to do so. This Court must consider this claim procedurally defaulted, and Mr. Jackson needs to demonstrate cause and prejudice for this Court to hear this claim. *McCall*, 114 F.3d at 757.[6]

Again, Mr. Jackson has failed to demonstrate the cause and prejudice necessary to overcome this procedural default. As discussed above, he cannot now argue that ineffective assistance of appellate counsel excused his failure to raise this claim to the Minnesota Court of

---

[6] A federal habeas claim can also be procedurally defaulted if a state court explicitly applies a procedural rule against a petitioner. *See, e.g.*, *Caldwell v. Mississippi*, 472 U.S. 320 (1985) (citing *Ulster County Court v. Allen,* 442 U.S. 140, 152–54 (1979)); *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (emphasizing that "[t]he default must have been actually imposed; it is not enough that the state court *could* or *should have* imposed a default") (alteration in original) (citation omitted), *as amended* (Dec. 14, 2004). In this case, because Mr. Jackson did not raise an ineffective-assistance-of-counsel claim about his legal papers and the Interstate Agreement on Detainers Act to the Minnesota Court of Appeals, the Minnesota Supreme Court presumably could have ruled that Mr. Jackson failed to properly preserve this claim for further review. *See, e.g.*, *State v. Sontoya*, 788 N.W.2d 868, 874 (Minn. 2010) (explaining that absent extraordinary circumstances, the Minnesota Supreme Court "will not consider issues raised for the first time on appeal") (citations omitted). The Minnesota Supreme Court, however, declined to make such a ruling. Instead, it summarily denied Mr. Jackson's PFR without any accompanying explanation. Because the Minnesota Supreme Court did not actually "rel[y] on the procedural bar as an independent basis for its disposition of [this claim]," this avenue for procedural default does not apply to Mr. Jackson's ineffective-assistance-of-counsel claim about his legal papers and the Interstate Agreement on Detainers Act. *See Caldwell*, 472 U.S. at 327.

Appeals. Mr. Jackson has also failed to present any arguments about both (1) how the outcome of his case would have different had the jail returned his legal papers; or (2) how the alleged violation of the Interstate Agreement on Detainers Act prejudiced his criminal case or incarceration. As such, Mr. Jackson's claim should be denied on the basis of procedural default.

### B. Ground One: Jury Instructions

Mr. Jackson's claim that the trial court committed plain error when it failed to define "assault" in the jury instruction for the burglary charge should also be denied on the basis of procedural default. Mr. Jackson raised the jury-instruction argument at the intermediate appellate level, but he did not include it in his PFR to the Minnesota Supreme Court. Petitioners challenging a Minnesota conviction or sentence must present their claims to the Minnesota Supreme Court before they can be entertained in a federal habeas proceeding. *See Reese*, 541 U.S. at 29. By omitting the jury-instruction claim in his PFR, Mr. Jackson failed to fairly present his claim to the Minnesota Supreme Court, so he did not exhaust his claim in the Minnesota state courts.

*Knaffla* bars Mr. Jackson from returning to the state courts to attempt to exhaust this claim now. Because he raised the jury-instruction issue to the Minnesota Court of Appeals, Mr. Jackson cannot argue that the jury instruction was not "known" at the time his appellate counsel filed the PFR. Given that Mr. Jackson raised other federal constitutional arguments to the Minnesota Court of Appeals, Mr. Jackson also cannot plausibly argue he was unaware of the potential constitutional dimension to his jury-instruction claim. The jury-instruction claim must be considered procedurally defaulted.

Mr. Jackson has not shown the requisite cause and prejudice to overcome this procedural default. Indeed, Mr. Jackson concedes that he "would have to agree that [the State] may be right"

that this claim is procedurally defaulted. Pet'r's Resp. to Resp't's Ans. ("Pet'r's Resp."), at 5, ECF No. 15. Even if Mr. Jackson had attempted to show cause for this procedural default by arguing that it was the result of ineffective assistance of appellate counsel, he would be precluded from doing so, because he failed to raise an ineffective-assistance-of-appellate-counsel claim in state court. *See, e.g.*, *Phillips*, 2010 WL 4792043, at *4.

Aside from the procedural barrier to challenging the jury instructions before this Court, Mr. Jackson's claim on this point would fail on the merits as well.[7] Moreover, "[a]s a general rule, jury instructions do not form a basis for habeas corpus relief," and to obtain habeas relief on a Fourteenth Amendment jury-instruction claim, the petitioner must show that "the alleged error so infected the entire trial that he was deprived of his right to due process." *See Williams v. Lockhart*, 736 F.2d 1264, 1267 (8th Cir. 1984) (citations omitted). Mr. Jackson has not met this heavy burden, as he has not offered any explanation for how he was harmed by the jury instructions provided. As the Minnesota Court of Appeals noted in its decision, Mr. Jackson "never argued during the trial that what was done to [the victims] was not 'assault'. . . [n]or d[id he] offer any support for his implied views that the jury . . . would have found [him] innocent of

---

[7]    The Court addresses both the default issue and the merits assuming that Mr. Jackson's claim as to the jury instructions actually presents a federal constitutional question. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus . . . *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (emphasis added). In his habeas petition, however, Mr. Jackson only asks this Court to determine whether "the [Minnesota] district court plainly err[ed] when it instructed the jury on count one, Burglary Charge, and [did] not define assault." Pet. at 6. Mr. Jackson's habeas claim about the jury instructions for the burglary charge appears grounded solely in Minnesota state law, rather than the Fourteenth Amendment's Due Process Clause. However, state-law claims are not cognizable under § 2254. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations omitted). Nevertheless, because the State did not raise this argument, this Court has construed Mr. Jackson's jury-instruction claim as relying upon the Fourteenth Amendment's Due Process Clause.

first-degree burglary if assault had been defined in the jury instructions." *See Jackson*, 2019 WL 3070093, at *3. Given both the procedural default and the failures on the merits, Mr. Jackson's jury instruction claim should be denied.

### C. Ground Two: Sufficiency of the Evidence

Mr. Jackson's habeas petition also claims that the jury lacked sufficient evidence to convict him. Pet. at 8. In its response, the State argues that Mr. Jackson's sufficiency-of-the-evidence claim fails on its merits.[8] Under § 2254(d)(1), habeas relief can be granted if the petitioner shows the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has made clear that to obtain habeas relief on a Fourteenth Amendment sufficiency-of-the-evidence claim, it must be the case that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Mr. Jackson did not meet this showing here.[9]

---

[8]    Mr. Jackson's sufficiency-of-the-evidence claim was not clearly raised to the Minnesota appellate courts as a federal constitutional claim. Instead, it appeared to present only a challenge based on Minnesota law concerning the use of circumstantial evidence. PFR Docs. at 17, 20–29; *See Jackson*, 2019 WL 3070093, at *2 (citing *Loving v. state*, 891 N.W.2d 638, 643 (Minn. 2017)). The State's failure to raise procedural default results in waiver of any such argument, so the Court will move straight to the merits of the sufficiency issue. *Jones v. Norman*, 633 F.3d 661, 666 (8th Cir. 2011) (regarding waiver).

[9]    Probably due in part to Mr. Jackson's apparent failure to make a Fourteenth Amendment insufficient-evidence claim in the state court system, the Minnesota Court of Appeals did not explicitly apply the *Jackson v. Virginia* test in its decision. The deferential standard of AEDPA, however, still applies to this claim. As the Eighth Circuit has emphasized, "[t]he pertinent question is not whether the [Minnesota Court of Appeals] explicitly discussed [a Fourteenth Amendment insufficiency claim], but whether its decision contradicted applicable Supreme Court precedent in its reasoning or result." *Cox v. Burger*, 398 F.3d 1025, 1029–30 (8th Cir. 2005) (citations omitted). In evaluating Mr. Jackson's sufficiency-of-the-evidence claim, the

(footnote continued on following page)

As discussed above, Mr. Jackson asserts that the fact that the comb contained his DNA and the fact that the hardhat potentially contained his DNA do not necessarily mean that he was the last person to possess either item, nor that he was the person who left them at the scene of the crime. Pet. at 8; PFR Docs. at 20–29. To withstand a Fourteenth Amendment challenge to the sufficiency of the evidence, however, "[t]he evidence need not exclude every reasonable hypothesis other than guilt." *United States v. Searing,* 984 F.2d 960, 963 (8th Cir.1993) (citing *United States v. Galvan,* 961 F.2d 738, 740 (8th Cir.1992)). The key question for this Court remains whether—after viewing the evidence in the light most favorable to the prosecution— "*any* rational trier of fact could have found guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added) (citing *Johnson v. Louisiana,* 406 U.S. 356, 362 (1972)); *see also Hill v. Norris*, 96 F.3d 1085, 1088 (8th Cir. 1996) (explaining that in a § 2254 proceeding, a federal court "must accord 'great deference' where the state appellate court has found the evidence supporting the conviction constitutionally sufficient (quoting *Ward v. Lockhart,* 841 F.2d 844, 846 (8th Cir.1988))).

Applying the *Jackson v. Virginia* standard to the facts of this case, this Court agrees with the Minnesota Court of Appeals that, when viewed together, the evidence presented "was sufficient to allow the jury to reach [a guilty] verdict." *Jackson*, 2019 WL 3070093, at *2. Because the *Webb* test applied by the Minnesota court is functionally identical to the *Jackson v.*

---

court of appeals analyzed whether the evidence, "when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach their verdict." *Jackson*, 2019 WL 3070093, at *2 (citing *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989)). This standard is functionally equivalent to the Fourteenth Amendment sufficiency-of-the-evidence standard laid out in *Jackson v. Virginia. See* 443 U.S. at 324. Thus, the state court "effectively adjudicated" Mr. Jackson's Fourteenth Amendment sufficiency-of-the-evidence claim when it applied Minnesota's *Webb* test, so the deferential standard of AEDPA governs this claim. *See Cox*, 398 F.3d at 1030.

*Virginia* test, Mr. Jackson cannot show that the Minnesota Court of Appeals' decision was contrary to clearly established federal law. *See, e.g.*, *Barnes v. Hammer*, No. CIV. 12-2745 PAM/SER, 2013 WL 5488531, at *16 (D. Minn. Oct. 1, 2013) (explaining that petitioner could not prove that the state court's decision was "contrary to" federal law when the state court correctly identified the relevant governing principles) (citations omitted), *aff'd,* 765 F.3d 810 (8th Cir. 2014). This Court is satisfied that the Minnesota Court of Appeals' conclusion that there was sufficient evidence to convict Mr. Jackson is "not contrary to, or an unreasonable application of, clearly established federal law" under § 2254(d)(1).

Mr. Jackson similarly fails to establish that the state courts' resolution of his case was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(e) mandates that this Court presume that a factual finding by a state court is correct unless the petitioner shows otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e); *see also White v. Dingle*, 757 F.3d 750, 755–56 (8th Cir. 2014) (discussing presumption of correctness of state courts' factual findings and explaining that it is the petitioner's burden to show that a state court's factual finding was unreasonable). Mr. Jackson's argument about the sufficiency of the evidence is best categorized as "reargu[ment of] the evidence in the record seeking the opposite outcome," rather than a direct attack on the Minnesota Court of Appeals' factual determinations. *See Fredrickson v. Minnesota*, No. 16-CV-2829 (PJS/TNL), 2017 WL 9672389, at *6 (D. Minn. Dec. 29, 2017), *report and recommendation adopted,* No. 16-CV-2829 (PJS/TNL), 2018 WL 1705264 (D. Minn. Apr. 9, 2018). As such, Mr. Jackson "has not shown by clear and convincing evidence that [the] factual determination by the Minnesota state courts was incorrect," and his sufficiency-of-the-evidence claim should be denied. *See id.*

For these reasons, the Court recommends that the claim raised in Ground Two of the habeas petition be denied on its merits.

### D. Ground Three: Ineffective Assistance of Counsel

Finally, Mr. Jackson contends that his trial counsel's representation was constitutionally defective for failing to properly investigate the case and interview Mr. Jackson's proposed witnesses and for failing to challenge the admissibility of the photo lineup evidence. Pet. at 8. Because Mr. Jackson raised this Sixth Amendment claim to the Minnesota Court of Appeals and the Minnesota Supreme Court, it is properly exhausted. This Court must now determine whether the Minnesota Court of Appeals' rejection of Mr. Jackson's ineffective-assistance-of-counsel claim is "contrary to, or involves an unreasonable application of, clearly established Federal law."[10] 28 U.S.C. § 2254(d)(1).

A Sixth Amendment ineffective-assistance-of-counsel claim is governed by the two-part *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To succeed on a *Strickland* claim on direct appeal, the appellant must show that counsel's actions fell below an objective standard of reasonableness, and that but for counsel's actions, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* Because this claim is being raised in a habeas petition, however, to obtain relief Mr. Jackson "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). For this Court to award relief, Mr. Jackson "must show that the [Minnesota] Court of Appeals applied *Strickland* to the facts of his case in an

---

[10]    At no point does Mr. Jackson appear to claim that the Minnesota Court of Appeals' denial of his ineffective assistance of counsel claim was "based on an unreasonable determination of the facts," as required to obtain habeas relief under § 2254(d)(2). Consequently, this Court will not analyze this second possible avenue for habeas relief.

objectively unreasonable manner." *Id.*; *see also Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (explaining that the combination of AEDPA and *Strickland* creates a "doubly deferential" standard of review (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009))). Mr. Jackson did not meet this heavy burden, and his ineffective-assistance-of-counsel claim should be denied.

In denying Mr. Jackson's claim that his trial counsel was constitutionally defective for failing to properly investigate the case and interview witnesses, the Minnesota Court of Appeals found that Mr. Jackson did not "overcome the presumption that counsel's performance was reasonable."[11] *Jackson*, 2019 WL 3070093, at *4. The court emphasized that trial counsel's investigative decisions are matters of trial strategy and thus entitled to substantial deference. *See id.* (citing *Strickland* for the proposition that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments" (quoting *Strickland*, 466 U.S. at 691)). Because Mr. Jackson "explain[ed] neither what a further investigation would have revealed nor what advantage he would have derived from whatever might have been revealed," the court held that Mr. Jackson failed to demonstrate that his counsel's performance was unreasonable. *Jackson*, 2019 WL 3070093, at *4.

---

[11] As was the case with Mr. Jackson's sufficiency-of-the-evidence claim, the Minnesota Court of Appeals did not directly confront the federal constitutional dimension of Mr. Jackson's ineffective-assistance-of-counsel claim. Instead, the court applied Minnesota's test for ineffective assistance of counsel. *See Jackson*, 2019 WL 3070093, at *4 (citing a Minnesota state case to explain that appellant must show that counsel's performance was objectively unreasonable and that he was prejudiced by counsel's performance in order to succeed on an ineffective-assistance-of-counsel claim). These two standards, however, are substantively identical, and the Court of Appeals even cited to *Strickland* when explaining its reasoning for denying the investigation component of Mr. Jackson's ineffective-assistance-of-counsel claim. *See id.* As such, the deferential standard of AEDPA still applies. *See Cox*, 398 F.3d at 1030. The fact that these two standards are functionally equivalent also means that the Minnesota Court of Appeals' decision was not contrary to clearly established federal law. *See, e.g.*, *Barnes*, 2013 WL 5488531, at *16.

This Court has closely examined the record in this case—including Mr. Jackson's response to the State's motion to dismiss his habeas petition—and this Court also failed to detect *any* indication of what exculpatory evidence a further investigation of the case might have turned up.[12] As a result, the Court finds that the Minnesota Court of Appeals' denial of the investigation component of his assistance-of-counsel claim was not manifestly unreasonable, and this portion of Mr. Jackson's claim should be denied.

The second component of Mr. Jackson's ineffective-assistance-of-counsel claim alleged that his trial counsel was constitutionally defective for failing to challenge the police procedure used in the photo lineup. In his *pro se* brief to the Minnesota Court of Appeals, Mr. Jackson claimed that "the whole process was tainted from the very start," because the two officers who conducted the photo lineup that led to R.J. uncertainly identifying Mr. Jackson as the possible perpetrator had been part of the initial investigation of the attack. Pet'r's Br. at 11. In denying this portion of Mr. Jackson's ineffective-assistance-of-counsel claim, the Minnesota Court of Appeals pointed out that the officers' participation in the initial investigation did not automatically render R.J.'s identification of Mr. Jackson inadmissible, and it also emphasized that Mr. Jackson had not provided any other reason why the photo-lineup evidence was inadmissible. *Jackson*, 2019 WL 3070093, at *4. The Court of Appeals added that even if the photo lineup evidence proved inadmissible, "the lack of harm suffered from the photo lineup is

---

[12]     Mr. Jackson's only argument about this ineffective-assistance-of-counsel claim in his *pro se* brief to the Minnesota Court of Appeals was that his trial counsel (1) "fail[ed] to investigate any of the several witnesses that [he] provided to her, or to interview anyone [sic] of them;" and (2) "[f]ail[ed] to investigate the television interview that both of the victims did days after the incident happen[ed], [e]ven though both victims did several interviews on many different stations." Pet'r's Br. at 10. Mr. Jackson did not provide any further support for this ineffective-assistance-of-counsel claim in his response to the State's motion to dismiss his habeas petition, other than to reiterate that this Court should grant him relief on this claim. Pet'r's Resp. at 4.

obvious in light of the facts that K.J. did not select any of the six photos as depicting the intruder and R.J. selected appellant's photo from the group with only 25% certainty." *Id.* While the Court can imagine even an uncertain identification that was the product of suggestive procedures being prejudicial to a defendant, in this case the record supports the Court of Appeals' analysis. One witness could not identify anyone at all from the lineup, surely an exculpatory fact, and the other identified the defendant with such clearly expressed uncertainty that it is difficult to find any taint from a flawed procedure or any actual prejudice.[13] Mr. Jackson's failure to establish that the photo lineup evidence was either inadmissible or prejudicial—particularly when combined with the other pieces of evidence tying Mr. Jackson to the attack—means that this Court cannot conclude that Minnesota Court of Appeals' decision was manifestly unreasonable. *See, e.g.*, *Barnes*, 2013 WL 5488531, at *17 (underscoring that the critical question for federal habeas courts is whether "the state courts offered a reasoned explanation for their determination that [the p]etitioner has failed to satisfy *Strickland*'s prejudice requirement"). This Court recommends the photo-lineup component of Mr. Jackson's ineffective assistance of counsel claim be denied.

## IV. Certificate of Appealability

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he

---

[13] This Court disagrees with the Minnesota Court of Appeals' assessment that Mr. Jackson "concede[d]" that the police followed proper procedure when conducting the photo lineup. *Jackson*, 2019 WL 3070093, at *4. Mr. Jackson's *pro se* brief does initially state he is "not challenging the procedure," Pet'r's Br. at 8, but it is quite clear from the remainder of his brief that Mr. Jackson *was* challenging the procedure for the photo lineup, *see, e.g.*, *id.* at 10 (alleging that his trial counsel was ineffective for "fail[ing] to challenge the procedure of the sequential photo display form").

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

All of Mr. Jackson's grounds for relief are claims upon which there has been no substantial showing of the denial of a federal constitutional right. The Court finds it unlikely that another court, including the Eighth Circuit Court of Appeals, would decide Mr. Jackson's claims differently than discussed above. As a result, the Court recommends that Mr. Jackson should not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Mr. Jackson's petition for a writ of habeas corpus be denied and that no COA be issued.

Date: April 5, 2021

       *s/Katherine Menendez*
       Katherine Menendez
       United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.